# THE

# MISCELLANEOUS REPORTS

OF THE

## STATE OF NEW YORK.

COMMENCING JULY, 1919.

---

JULIUS I. KISLAK, Respondent, *v.* DUNCAN I. ROBERTS, etc., Appellant.

(Supreme Court, Appellate Term, First Department, July, 1919.)

Contracts — oral agreement as to commissions for sale of real estate — options — evidence.

Where in an action to recover commissions on the sale of real estate the complaint sets up one count on an oral agreement and another on *quantum meruit,* and it appears on the trial that plaintiff procured a tenant for defendant by assuring it that the lease, which contained a ninety day cancellation clause, would be equivalent to a sale as the tenant would probably buy rather than move, and defendant agreed to pay plaintiff commissions if a sale were made through his efforts and later gave him a written option for the tenant to purchase at a fixed sum by a certain date with stipulated brokerage fees, and it further appears that when the option was about to expire plaintiff and defendant's president had a conversation wherein the latter refused to extend the option, said he would have nothing more to do with the matter and was through, a question of fact is presented for the jury as to whether it can reasonably be inferred that this conversation not only had reference to an extension of the option but also revoked and cancelled the prior oral agreement in regard to plaintiff's commissions if he put through a sale, and it is error

1

Appellate Term, First Department, July, 1919.     [Vol. 108.

to direct a verdict in plaintiff's favor at the close of the case. This is so although defendant later sold to the tenant by following exactly plaintiff's plan to compel the purchase by threatening to cancel the lease.

The original oral agreement between the parties as to commissions was not merged in the written option as a matter of law and evidence as to it is competent if such evidence does not contradict the written agreement and is not inconsistent therewith.

There should also be submitted to the jury the questions whether under the evidence there was in fact any agreement for commissions other than the written option and whether the plaintiff was the procuring cause in effectuating the sale, it appearing that he had no part in the final negotiations.

APPEAL by the defendant from a judgment of the City Court of the city of New York, for $1,507.79, directed by the court, after a trial before the court and a jury; also from an order denying a motion to set aside the verdict and for a new trial.

Earnest R. Eckley (Simon Sultan, of counsel), for appellant.

David L. Podell (Joseph A. Corr, on brief), for respondent.

FINCH, J. This action was brought to recover commissions alleged to have been earned by the plaintiff in procuring a purchaser of certain real estate owned by the defendant in New Jersey. The court below directed a verdict in favor of the plaintiff at the close of the entire case.

The material facts are substantially as follows: the property owned by the defendant had been on the market for some time, and so anxious was the defendant to effect a sale that he would not lease. One Perkins, a large dealer in plumbers' supplies, was in search of

a place to lease, as the premises which had been occupied by him had been sold and he was compelled to move within a short time. He had instructed the plaintiff to try and obtain a lease of the premises owned by the defendant. The plaintiff approached the defendant in an endeavor to obtain a lease, but the defendant refused to make a lease. The plaintiff insisted that a lease with a cancellation clause meant a sale to Perkins since the latter had a large stock of heavy hardware, and that by leasing to Perkins for a year and providing for a cancellation clause within a period of thirty days, the defendant could give notice of cancellation and Perkins would be unable to find a place within such a short period, and even if he found a suitable place the moving would cost from $15,000 to $20,000, and hence he would be compelled to purchase the premises at the price the defendant was asking, which was under $30,000.

Upon the plaintiff showing to the defendant that a lease under such circumstances meant a sale, the defendant said "All right, if you say it is a sale, I will go away from my stipulated rule and I will give a lease."

The plaintiff telephoned Perkins in the presence of the defendant and from the defendant's desk, and the parties compromised in this conversation on a cancellation clause of ninety days. During this same conversation at the office of the defendant, the defendant and the plaintiff had a conversation in reference to what the plaintiff's commissions would be on the sale, and the defendant agreed with the plaintiff that in the event of a sale he would give him five per cent commission.

The lease was subsequently executed and plaintiff received a commission therefor, and on the same day

**4**        KISLAK v. ROBERTS.

the defendant signed an instrument in writing, reading as follows:

" This agreement made this 26th day of March, 1917, by and between the United States Express Company, party of the first part, and Arthur L. Perkins, of Jersey City, N. J., party of the second part.

" *Witnesseth,* that for and in consideration of the sum of One Dollar ($1.00) and other good and lawful consideration, receipt of which is hereby acknowledged, the party of the first part hereby agrees that the party of the second part, or his assign, shall have the privilege or option to purchase the property known as 170 and 172 Eighth Street, City of Jersey City, N. J., for the sum of Twenty-nine Thousand ($29,000.00) Dollars cash, or such other terms as may be agreeable to the party of the first part, which said option shall be good up to and including the 30th day of June, 1917, and in the event that the property is purchased by the party of the second part, or his assign, at the price named, the party of the first part will convey property by Bargain and Sale deed and will pay to J. I. Kislak of Hoboken, N. J. Five Per Cent (5%) of said sum as and for a commission for securing such sale.

" UNITED STATES EXPRESS COMPANY

" by D. I. ROBERTS,

" *President.*

" Witness

" F. E. CURRY."

Perkins never saw this writing until the day of the trial, and had no knowledge of its existence until then. Perkins moved into the premises, and the plaintiff asked Perkins several times to buy, but Perkins always told him that he was unable to buy as he had no money to put into the property. When the time came that the option was about to expire by its terms, the plain-

tiff went to the defendant and sought to obtain an extension of time. He said to the defendant, " Mr. Perkins does not seem anxious to do business with me " and asked the defendant " Will you allow Mr. Curry (who was defendant's attorney and cognizant with all the transaction) to help make the deal. Let him work with Perkins;" to which the defendant replied, " Now your time is running out; I won't have anything more to do with it." Plaintiff said, "Well, it is my buyer, he will surely buy. What are you trying to do? Force me out." Defendant replied, " I have nothing to say;" I said, " Will you extend the time." He said " No, I have got nothing to say; I am through."

This conversation primarily would seem to have reference to an extension of the option which plaintiff was seeking so as to keep other brokers out. At the most a question of fact is raised for the jury as to whether it can reasonably be inferred that this conversation not only had reference to an extension of the option but also revoked and cancelled the agreement which the plaintiff had previously made with the defendant, namely, that he was to be entitled to a brokerage of five per cent if he put through a sale. The existence of this agreement of the plaintiff with the defendant is virtually admitted by the defendant, and this suit is being contested by and on behalf of the purchaser, Perkins, who agreed at the time of the purchase to hold the defendant harmless from any liability for commissions. Neither the defendant nor his attorney Curry was called as a witness by the defendant, but they were on the contrary examined before trial on behalf of the plaintiff and their depositions were read on behalf of the plaintiff. In such deposition the defendant testified: "A. I have no recollection of dis-

Appellate Term, First Department, July, 1919. [Vol. 108.

cussing commissions. Doubtless we spoke of it, but I cannot recall what was said because I knew that unless otherwise agreed to a commission would have to be paid by somebody in the regular way." Curry also testified as follows: " You heard Mr. Perkins say the difficulties he would have had if he had to move out in July? A. Yes, sir. Q. You heard him testify to that? A. Yes. Q. In this deal Kislak and MacDonald were to receive their commission if the deal was made from the United States Express Company? A. I know nothing about Mr. MacDonald. Q. Kislak? A. Yes."

Before the option ran out, the plaintiff brought other prospective buyers to the premises, and the plaintiff testified in substance that he brought them there for the purpose of making Perkins think that the property would be bought over his head and that he would have to move. Plaintiff also wrote a letter to defendant on June twenty-ninth, saying that Perkins promised to call at defendant's office some time next week with a view to purchasing the property, and that plaintiff believed that defendant could do better with Perkins at this time. On the eleventh of July, the defendant wrote to Perkins acknowledging a letter to him of July tenth (presumably asking for such appointment) and said he would be glad to see Perkins at the defendant's office any afternoon. Pursuant to this meeting, Perkins and the defendant met and closed the contract for the sale of the property. It thus appears that the defendant in effecting a sale of this property had followed exactly the plan proposed by the plaintiff to compel the purchase. Defendant had notified Perkins that his lease would be cancelled under the ninety day provision, and Perkins was practically compelled to purchase the property, or as he himself testified, " because of the situation into which

the brokers had gotten him." No commission has been paid to any person.

Plaintiff in his complaint relies upon two causes of action; one based upon an agreement by defendant to pay plaintiff five per cent commission on the purchase price in consideration of plaintiff securing a purchaser, and the other based upon a *quantum meruit.* Considering the first cause of action, it is to be noted that plaintiff apparently pleads and relies upon an oral agreement of which a memorandum was made to pay plaintiff a commission of five per cent if he brought about a sale, which oral agreement antedated the agreement contained in the exclusive option which had expired. It is clear that plaintiff must succeed, if at all, upon this oral agreement, for the reason that the written agreement contained in the option expired with the latter. Defendant contends that all of the oral conversations between the plaintiff and the defendant out of which grew the agreement by the defendant to employ the plaintiff as a broker and to pay him a five per cent commission, which agreement was prior to the signing of the option, were merged in the option agreement as a matter of law, and that no evidence regarding such oral conversations is competent, since such evidence is contrary to the written agreement. In this defendant is in error. Without considering the fact that the plaintiff is not a party signatory to this agreement, it is plain that these conversations do not contradict the written agreement, nor are they ·in any way inconsistent with it. The written agreement does not purport to be exclusive and to prevent the plaintiff from bringing about the sale in the same manner as any other broker might. In addition, therefore, to the question of fact already noted, there are two additional questions of fact,

namely, whether there was any agreement as to commission except as contained in the option, and, *second,* whether the plaintiff was the procuring cause in effectuating a sale. On both of these questions there are at least conflicting inferences to be drawn from the evidence, if not indeed contradictory evidence, and thus are raised issues for the jury to pass upon. The defendant asked leave to go to the jury upon both of these latter questions, and the denial of his motion and the direction of a verdict for the plaintiff by the court presents error for which there must be a new trial.

Judgment reversed and new trial ordered, with costs to appellant to abide the event.

LEHMAN, J. (dissenting). It appears that about March twenty-second or twenty-third the plaintiff, a real estate broker, presented to the defendant an offer to lease the premises. The defendant at first objected to granting any lease because he desired to sell the property and did not wish to tie it up. The plaintiff told him " the best I could do at that time was a lease." He also told him that the proposed lessor " was located in a building that was sold; that he had to get out; that he had a stock amounting to about $100,000 of plumbing supplies, very heavy material, and if he went in that building he could not possibly move out; that he would have to go to an expense of $15,000 or about $20,000 in order to get into that building, and that once he got in there it was absolutely certain he would buy the property notwithstanding the fact he wanted to lease it at that time." The defendant then said: " All right, if you say it is a sale I will go away from my stipulated rule and I will give a lease." The defendant desired to put a thirty-day cancellation clause in the

lease. The plaintiff thereupon called up Mr. Perkins, the proposed lessor, from a telephone on the defendant's desk and in his presence, and discussed with him the question of the cancellation clause. It was finally agreed that a ninety-day cancellation clause should be inserted upon the assurance of the defendant's attorney that in any event it would take at least ninety days to put through a sale, and upon the argument of the plaintiff that " Mr. Perkins could not rent anything anywhere else within ninety days and move, that it was a physical impossibility for him." At that time it was agreed that the plaintiff should be paid five per cent commission on the lease. The plaintiff at the same interview took up with the defendant the question of commissions on a sale. He asked the defendant for the price of the property and the defendant stated the price was $30,000. The plaintiff then attempted to obtain a lower price and the defendant answered: " Well, if you come around with the money — you are not ready to talk business,— if you come around with the money we will talk business." The defendant asked the plaintiff how much his commissions were, and plaintiff told him that his commissions were five per cent. There was some discussion as to this amount. The plaintiff testified " so, anyway he said: ' If you get my price I don't care, I will allow you five per cent commission.' So I said to him, ' I will get you your price if you will help me. We have got to work together in this thing,' I said ' I am certain that the man will buy, but we have got to work together on it.' He said ' All right.' He said ' All right. He will give me five per cent.' "

At a subsequent meeting a lease was executed to Perkins and the defendant then drew up and delivered to the plaintiff a paper which was introduced in evidence as plaintiff's Exhibit 4. In that instrument the

Appellate Term, First Department, July, 1919. [Vol. 108.

defendant grants to Perkins an option " to purchase the property for the sum of $29,000 in cash or such other terms as may be agreeable to the party of the first part, which said option shall be good up to and including the 30th day of June, 1917, and in the event that the property is purchased by the party of the second part or his assign at the price named, the party of the first part will convey property by bargain and sale deed and will pay to J. I. Kislak of Hoboken, New Jersey, five per cent of such sum as and for a commission for securing such sale." The plaintiff never told Perkins of the existence of this instrument and Perkins never saw it until the day of the trial. Perkins moved into the premises and the plaintiff asked him several times to buy, but Perkins always told him that he was unable to buy, as he had no money to put into the property. Before the option ran out the plaintiff brought other prospective buyers to the premises " so Perkins could see them." He never obtained any offer from Perkins that the defendant would even consider. When the option was about to expire the plaintiff called upon the defendant. His testimony in regard to the interview had with him at that time is as follows: " I think I spoke to Mr. Curry first. I said to Mr. Roberts: ' Mr. Perkins does not seem to be anxious to do business with me.' I said, ' Will you allow Mr. Curry to help me make the deal? Let him work with Mr. Perkins.' And Mr. Roberts said, ' Now your time is running out. I won't have anything more to do with it.' I said, ' Well, it's my buyer. He will surely buy. What are you trying to do, force me out? ' He said, ' I have nothing to say,' he says. I said, ' Will you extend the time? ' He said, ' No, I have got nothing to say. I am through.' "

The plaintiff further testified that before seeing Mr. Roberts he had a talk with Curry, Roberts' attorney,

in which he told him that he would share his commissions with him if he would help sell the property, and Curry said he would see Roberts. Thereafter the plaintiff had no further negotiations with Roberts or Perkins, but on July sixth the defendant wrote to Perkins: " While under no obligation, I think it but fair that I should call your personal attention to the fact that your option for purchase of property owned by this company and now occupied by the Arthur L. Perkins Co. expired with June thirtieth last, and we have again taken up negotiations looking towards sale." Probably as a result of this letter Perkins thereafter arranged an interview with Roberts in which he asked him to let him remain in the premises until the expiration of the lease, but Roberts refused to do so, saying that he was trying to sell the property but thought it fair to give Perkins the first chance to buy. After some negotiations between the parties Perkins finally agreed to buy the property for the sum of $26,750, and the plaintiff now brings this action to recover five per cent commissions upon this sum.

The plaintiff claims the so-called option contains an absolute agreement to pay the plaintiff five per cent upon any sale that may be made to Perkins, but I think Mr. Justice Finch's view that this clause must be read in connection with the entire instrument is correct, and that the written agreement provided only for commissions if Perkins bought the property within the time limited by the option. I further agree with Mr. Justice Finch that if the parties by parol agreed that the defendant would pay the plaintiff five per cent commissions upon any sale of the property, proof of this parol agreement would not contravene the rule that a written agreement cannot be varied or enlarged by parol. In my opinion, however, the evidence shows clearly that if any agreement was made other than

Appellate Term, First Department, July, 1919.    [Vol. 108.

that embodied in the option, the agreement was merely to pay the plaintiff five per cent if he actually negotiated the sale as broker at a price satisfactory to the defendant, and there was no agreement to pay him any commission if Perkins bought the property after the expiration of the option unless the plaintiff was the procuring cause of the sale and brought the minds of the parties together. I think that the testimony which I have quoted shows this fact, and in addition, we have the testimony of a fellow broker of the plaintiff's to the same effect. When the option expired the plaintiff had clearly not brought the minds of the parties together upon the terms of a sale. He himself stated so to Mr. Roberts and he tried to procure the aid of Mr. Roberts' attorney by offering to share commissions with him, and at that time the defendant discharged the plaintiff as broker. Undoubtedly he had a right to do so unless the plaintiff had already brought the negotiations to a successful conclusion or was about to do so, and the defendant discharged him in bad faith, to prevent his earning commissions. In view, however, of the plaintiff's own statement that " Mr. Perkins does not seem to be anxious to do business with me," and his offer to Curry to share commissions with him and his request to Roberts to allow Curry to help him, I hardly see how it is possible to claim that the defendant was acting in bad faith. He had accepted the plaintiff's assurance that the lease was equivalent to a sale and had given the plaintiff three months to consummate the sale, and both the plaintiff and his witness, MacDonald, testified that the option embodied the agreement between the parties.

It seems to me that we would stretch the testimony beyond all reason if we were to hold that the defendant did not thereafter have the right to negotiate personally with Perkins or any other prospective pur-

chaser without making himself liable to pay the plaintiff five per cent commissions on the sale. In this connection it must be remembered, too, that even according to the plaintiff's story he was to receive five per cent commissions only if he procured a purchaser at a price acceptable to the defendant. The only price mentioned then by the defendant was $29,000, and the price actually agreed upon by the parties $26,750, and the plaintiff had nothing to do with the fixing of this price. It is not a case where a broker introduces a prospective purchaser and the owner then takes the negotiations out of the broker's hands and conducts them himself, for in this case the plaintiff had procured Perkins as a lessor and has been paid his commissions upon the lease, and had asked and obtained an option for three months in which he protected his right to commissions during that time. When he admitted failure to procure an acceptable offer from the lessor within that time, the defendant had a right, in my opinion, to proceed to negotiate with his lessor himself and to try to reach an agreement with him without making himself liable for any commissions.

Mr. Justice Finch argues that the conversation between the plaintiff and the defendant about the time the contract expired referred only to an extension of the option, but I think that the testimony I have quoted shows clearly that Roberts revoked and cancelled the plaintiff's employment as a broker. If there can be any doubt on this subject that must disappear by reason of the further testimony of Kislak that the defendant said to him "that he would not be bothered with him any more and he will attend to his own business." However, even if we should adopt the construction placed upon this conversation by Mr. Justice Finch, it seems to me that the plaintiff's position would be, if anything, worse, for after that time the

Appellate Term, First Department, July, 1919.   [Vol. 108.

plaintiff apparently had no further negotiations and actually abandoned the work, and can therefore not recover unless there is proof that at that time he had really consummated the sale, and the proof is entirely to the contrary. All that he has shown is that he induced the defendant to make a lease to Perkins by arguing that if such a lease were made Perkins would be in a position which would necessitate his subsequently buying the property, and that as a matter of fact the lease did put Perkins into a position in which he found it advisable to purchase the property, and Perkins and the defendant thereafter, without any further interposition of the plaintiff and after his discharge, came to an agreement of purchase upon terms acceptable to both. For these reasons I think that the judgment should be reversed and the complaint dismissed.

Judgment reversed and new trial ordered, with costs to appellant to abide the event.